UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

BARBARA HALL,

                Plaintiff,

- against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

-----------------------------------------------------------X

**MEMORANDUM AND ORDER**

1:05-cv-2863-ENV

VITALIANO, D.J.

Plaintiff Barbara Hall brought this action on June 6, 2005. She seeks review, pursuant to 42 U.S.C. § 405(g), of a final decision by the Commissioner of Social Security ("Commissioner") that she was not disabled for the period claimed and was, therefore, ineligible to receive disability insurance benefits under Title II of the Social Security Act. The Commissioner has moved, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings. For the reasons set forth below, the Commissioner's motion is granted.

**Background**

I.    *Plaintiff's Background and Relevant Testimony*

Barbara Hall was born on April 9, 1963. (R. 149.)[1] She finished tenth grade and received vocational training in clerical work at Brown Business Institute in 1982. (R. 151.) Between 1989 and 2000, she was employed by Con Edison, where she performed clerical work such as answering telephones, typing, and making schedules. (R. 155.) For some time in the 1990s, she also worked as a cashier at J.C. Penney. (Id.) Just prior to the onset of her alleged disability, Ms. Hall had worked

---

[1] Citations to "R." are to the administrative record filed by the Commissioner.

as a data entry clerk for a temporary employment agency. (R. 153-55.)

Ms. Hall alleges that the date of the onset of disability was April 16, 2002, the day she stopped working. (R. 47.) She would eventually return to work full-time on September 23, 2003 as a dispatcher for a transportation company. (R. 152-53.) She thus seeks disability benefits for the period between April 16, 2002 and September 23, 2003, claiming that she suffered both from anxiety attacks and pain in her left hand that traveled up her left arm to her neck and back. (R. 47.)

Despite an onset date of April 16, 2002, Ms. Hall did not seek treatment until December 2, 2002, when she visited the East New York Diagnostic and Treatment Center. That visit was prompted solely by her desire for treatment for her panic attacks. (R. 122-23.) The record does not indicate that plaintiff sought medical attention for her physical impairments at any time during the period of her alleged disability.

At her August 24, 2004 hearing before administrative law judge Hazel C. Strauss ("ALJ"), Ms. Hall testified that she received unemployment insurance for six months after she stopped working in April 2002, and that she had told the unemployment office that she was ready, willing, and able to work. (R. 173.) For part of the period that she was out of work, Ms. Hall attended York College to prepare for the general equivalence degree examination. Between January and June 2003, she attended classes on Mondays through Thursdays between 9:00 a.m. and 2:00 p.m. (R. 164.) She testified that she was able to complete her schoolwork, which required writing with her left hand. (R. 165.)

On most days during her alleged period of disability, Ms. Hall would take her son to and from school. (R. 167.) She also drove each day to visit her mother, a ride of about thirty minutes in each direction. (R. 151.) Ms. Hall shopped and performed chores, such as washing dishes, cleaning,

2

and doing laundry. (R. 167-68.) At her hearing, Ms. Hall testified that during this period, she did not have any problems standing and walking. (R. 173.) She further testified that with a sufficiently supportive chair, she would have no problem sitting for an unlimited amount of time. (R. 172-73.)

II.    *Vocational Evidence*

At Ms. Hall's hearing before the ALJ, Andrew Pasternak testified as a vocational expert. He opined that an individual of Ms. Hall's age, background, and physical limitations, as she had described herself at the hearing, could still perform her prior relevant work as a general clerk, both as that position is performed generally and as it was performed by Ms. Hall at Con Edison. (R. 178-79.) However, the vocational expert found that given Ms. Hall's claimed physical impairments, she would be unable to perform data entry or cashier work. (R. 178.)

II.    *Medical Evidence*

On December 18, 1999, Ms. Hall visited the emergency room at Jamaica Hospital Medical Center. (R. 86.) She reported feeling weak, dehydrated, and under severe stress from working two jobs. (R. 92.) A triage nurse observed that Ms. Hall was hyperventilating and had a pulse of 122 beats per minute. (R. 89.) However, results of her physical evaluation were normal and she was diagnosed with anxiety disorder. (R. 86-92.)

On August 27, 2000, Ms. Hall visited the emergency room of Franklin Hospital Medical Center. (R. 71.) She complained of neck and back pain. (R. 72.) She also complained that she had suffered occasional headaches for the previous five months. (R. 75.) A physical evaluation, which included x-rays, revealed no abnormalities and the treating physician prescribed motrin for neck pain. (R. 74, 77.) On September 11, 2000, Ms. Hall returned to the Franklin emergency room, complaining of a severe six-day headache. (R. 78-80.) Again, Ms. Hall underwent a physical

Council's denial letter indicates that the Council considered additional evidence from Ms. Hall's treating physician that had not been produced to the ALJ even though the ALJ had twice issued subpoenas seeking these records. (R. 4, 65-66.) The additional records made available to the Appeals Council related to the claimed panic disorder. Ms. Hall never produced any records relating to her claimed physical impairments.

Ms. Hall timely commenced this action on June 6, 2005.

## Legal Standard

I.  *Disability Determination*

To be eligible for disability benefits, an applicant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Further, the impairment must be:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). In assessing disability claims, the Commissioner must apply a five-step evaluation procedure, promulgated in 20 C.F.R. § 404.1520, which the Second Circuit has implemented as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an

7

impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience .... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curium)). In applying the five-step process, an ALJ "must consider" four factors in determining a claimant's entitlement to benefits: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (citation omitted). The claimant bears the burden of proof as to the first four steps, and if the claimant is successful, the burden then shifts to the Commissioner at the final step. Id. Accordingly, a claimant bears the burden of producing required medical evidence. See 42 U.S.C. § 423(d)(5)(A).

II.     *Standard of Review*

In reviewing the Commissioner's denial of benefits, this Court may reverse the Commissioner's decision only when it is based upon legal error or is not supported by substantial evidence. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971) (quoting Consol. Ed.

8

Co. v. NLRB, 305 U.S. 197, 229 (1938)). "In determining whether substantial evidence supports a finding of the Secretary, the court must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such a finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." Rivera v. Sullivan, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991) (citation omitted). However, it is not this Court's role to substitute its judgment merely because it might have reached a different result had it reviewed the case de novo. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).

**Discussion**

I.  *Notice of Right to Counsel*

At oral argument before this Court, Ms. Hall – who has not submitted any papers explaining her specific objections to the Commissioner's decision – argued that her hearing before the ALJ was unfair because she was somehow deprived of counsel. In this regard, the Commissioner is required to:

> notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security. Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge.

42 U.S.C. § 406(c).

At Ms. Hall's hearing, the ALJ stated:

> Ms. Hall, you are here today without a legal representative, and I note that your file has indicated that you have been advised in writing that you have a right to have a legal representative if you wish to have one. So, I'm again advising you that you have that right. A legal representative could assist you in obtaining medical records that might be important to your case, and could also assist you in the course of the hearing. If you wish to have one final adjournment to discuss your case with a legal

9

representative, I would grant you that one adjournment. If you need a list of possible legal sources to contact, I could also provide you with a list of possible legal sources with whom you can discuss your case. There are some legal service agencies that do not charge any fee, and other representatives who do charge a fee are entitled to a fee only in the even that there is a favorable decision, and that fee comes out of any past-due benefits. A legal representative, however, is not required for the hearing, and we can proceed here today without a legal representative. Do you wish to proceed here today without a legal representative?

(R. 146-47.) In response to the ALJ's statement, plaintiff made clear her intention to proceed without counsel. (R. 147-48.) The record further indicates that before her hearing, Ms. Hall was, in fact, provided with a list of possible legal sources to contact. (R. 25-29.) Ms. Hall does not contend that she failed to comprehend or understand any information conveyed to her, and there is no indication from the record that this could conceivably be the case. As a result, the Court finds that the Commissioner adhered to statutory requirements in informing plaintiff of her right to counsel and that Ms. Hall knowingly and voluntarily waived her right to a legal representative at the hearing below.

II.     *ALJ's Determination*

The ALJ found that plaintiff did not suffer from a severe impairment, and that even if she had suffered from a severe impairment, Ms. Hall still could have performed her past relevant work as defined by 20 C.F.R. § 404.1565.

In determining whether a claimant is disabled, the ALJ evaluates the claimant's subjective statements in relation to the objective medical evidence and other evidence on the record. 20 C.F.R. § 404.1529(c)(4); see also Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979) ("The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged by the

10

claimant."). When a claimant's symptoms suggest an impairment of greater severity than can be shown by objective medical evidence alone, the ALJ will consider other factors, such as the claimant's medications and pattern of daily living. 20 C.F.R. § 404.1529(c)(3); see also Social Security Ruling 96-7p ("If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record" and then "make a finding on the credibility of the individual's statements about symptoms and their functional effects."). The ALJ's judgment regarding a claimant's credibility is accorded deference by this Court on review. Ruiz v. Barnhart, 03-cv-10128, 2006 WL 1273832, at *7 (S.D.N.Y. May 10, 2006).

In assessing the severity of an impairment:

an impairment or combination of impairments is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.

Social Security Ruling 96-3p. As the ALJ accurately noted, "there are no objective tests to show that the claimant had any medically determinable severe impairment during the relevant closed period." (R. 15.) Worse still, the limited medical evidence within the record mostly contradicts plaintiff's claims of a severe impairment. Dr. Bernstein, the Commissioner's psychiatric examining physician, opined, "based on claimant's own reported medical history," that Ms. Hall suffered from a relatively mild panic disorder. (R. 95.) Dr. Malieckal, a state agency consultant, similarly found that Ms. Hall

did not suffer from a severe anxiety disorder.[2] (R. 99.) The ALJ relied upon these opinions in determining that Ms. Hall's impairment was not severe.

The only medical evidence to support plaintiff's claims was the report of Dr. Ilan, the Commissioner's orthopedic examining physician. Dr. Ilan diagnosed neck pain with cervical radiculopathy, left carpal tunnel syndrome, and anxiety. She concluded, without further specification, that Ms. Hall was not then a work candidate. The ALJ, however, discounted Dr. Ilan's conclusion. Indeed, the ALJ found that the objective medical evidence put forth in Dr. Ilan's report supported the opposite conclusion that Ms. Hall's physical impairments were either non-existent or non-severe. Dr. Ilan's report indicates that Ms. Hall reported some tenderness in her back. However, she had no muscle atrophying. X-rays of her cervical spine revealed some change in alignment, but no disc narrowing or prevertebral swelling. Her gait was normal. Deep tendon reflexes were normal in all extremities. Muscle strength in her right upper extremity was normal. Muscle strength in her left upper extremity was only slightly decreased. Bilateral alternating digit and wrist movements were intact and normal. Ms. Hall's bilateral lower extremities had a full range of motion and normal muscle strength, except for the left knee, which had a slight decrease in strength. Neck range of motion was only slightly decreased. This evidence, all relied upon below, supports the ALJ's finding that Ms. Hall's physical impairments were not severe. (R. 97.)

Regarding plaintiff's anxiety, the ALJ properly afforded the psychiatric experts' opinions more weight than the opinion of Dr. Ilan, an orthopedist who was examining plaintiff's physical ailments. See 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a

---

[2] An ALJ may properly consider the assessment of a state agency medical or psychological consultant. 20 C.F.R. § 416.927(f)(2)(i).

12

specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

In assessing the opinion of Dr. Ilan, a non-treating physician, the ALJ considers: "(1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the opinion's consistency with the record as a whole, (5) the physician's specialty with respect to the injury, and (6) other relevant factors." Streeter v. Barnhart, 01-cv-4066, 2002 WL 467504, at *17 (S.D.N.Y. Mar. 28, 2002) (summarizing 20 C.F.R. 416.927(d)). Dr. Ilan's conclusions were based on a one-time visit and the record strongly suggests that she based her conclusions solely on Ms. Hall's self reports. The ALJ pointed out that Dr. Ilan's conclusions were completely unsupported by the objective evidence in the record. In light of the objective evidence in the record, viewed in totality, and as relied upon by the ALJ, this Court does not find that the ALJ erred in discounting the conclusions of Dr. Ilan. Nor is there a basis to disturb the ALJ's finding that the testimony of Ms. Hall regarding these physical impairments lacked credibility.

Records from Ms. Hall's treating physician, ENYDTC, which were produced and considered by the Appeals Council,[3] further support the ALJ's decision to discount Dr. Ilan's conclusions regarding Ms. Hall's physical ailments. In her initial visit to ENYDTC on December 2, 2002, Ms. Hall reported that she had no current medical problems, was not taking medication on a regular basis, and had never been treated for psychiatric problems. (R. 122.) Further, the records from

---

[3] When new evidence is submitted to the Appeals Council, it will "review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of evidence currently of record." 20 C.F.R. § 404.970(b).

13

ENYDTC show that, on June 23, 2003, Ms. Hall underwent a physical examination, which indicated no physical problems other than seasonal allergies. (R. 130.) Thus, the records suggest that during the relevant period, Ms. Hall failed to even mention her physical impairment when visiting her treating physician. She was treated by ENYDTC only for her mental impairments. These records strongly contradict Ms. Hall's testimony to the ALJ that ENYDTC had treated both her mental and physical ailments. (R. 160-61.)

Regarding Ms. Hall's mental impairment, the ENYDTC medical records are consistent with the findings of the ALJ. Specifically, Ms. Hall's treating psychiatrist diagnosed anxiety disorder with limited symptoms of panic attacks. (R. 135.) The medical records give no indication that Ms. Hall suffered from the type of severe impairment that would keep her from returning to work. In fact, the records support a finding that Ms. Hall's unemployment was unrelated to any medical condition. Records of a psychiatric interview, dated May 30, 2003, state that Ms. Hall was unable to find a job because she had no high school diploma. (R. 138.) Ms. Hall also indicated that she had a poor work record as she had been arrested for stealing $5,000 in gift certificates from a past employer. (Id.) Absent from that same psychiatric record is any indication that a physical or mental disability also contributed to Ms. Hall's inability to find work. Instead, the record indicates that Ms. Hall was taking classes to prepare for the general equivalence degree examination, presumably so she would have an easier time finding work. (Id.) After reviewing the ENYDTC medical records, this Court concludes that the Appeals Council was within its authority in refusing to review the administrative law judge's opinion because that decision was consistent with the additionally submitted evidence.

In coming to her conclusion, the ALJ also properly assessed Ms. Hall's daily activities during

14

the relevant period. The extent of these activities, when considered cumulatively, undermines Ms. Hall's disability claim. Specifically, Ms. Hall testified that her impairments did not prevent her from driving a car. In fact, she would drive daily to visit her mother, a 30 minute drive each way. She washed dishes, shopped, cleaned, mopped, and did laundry. Cf. Barrientos v. Secretary of Health and Human Services, 820 F.2d 1, 3 (1st Cir. 1987) (cooking, washing dishes, and doing laundry were "inconsistent with the degree of limitation of function associated with severe pain"); Crichlow v. Shalala, 92-cv-7602, 1994 WL 132155, at *10 (S.D.N.Y. Apr. 12, 1994) (cooking, shopping, doing laundry and odd tasks was evidence that claimant was not disabled). Between January and June 2003, Ms. Hall attended York College for four days each week and five hours each day to prepare for the general equivalence degree exam. She was able to sit and write with her left hand. See Hofacker v. Weinberger, 382 F. Supp. 572, 576 (S.D.N.Y. 1974) (attending school for six hours daily is substantial evidence of non-disability). Ms. Hall had no problems walking or standing, and she could sit for an unlimited amount of time in a supportive chair.

Taken together, Ms. Hall's testimony regarding her daily activities supports the ALJ's finding that she did not suffer from the type of severe impairment that would have prevented her from continuing her past relevant work as a general clerk. The Court is aware that over-reliance on evidence of a claimant's daily activity can create a perverse incentive, punishing those claimants who attempt to overcome their disabilities. However, in this case, the evidence of Ms. Hall's life activity overwhelmingly suggested that her lifestyle was unaffected altogether by her impairment. Accordingly, the Commissioner was warranted in relying, at least in part, on this evidence, which is consistent with the absence of any objective medical proof of physical impairment.

The ALJ also relied on the hearing testimony of Andrew Pasternak, a vocational expert. Mr.

Pasternak testified that even if Ms. Hall were given credit for her alleged physical ailments, as described by the ALJ when posing a hypothetical question, Ms Hall still could have performed her past relevant work as a general clerk both as that position is performed generally and as it had been performed by Ms. Hall. (R. 178.) In coming to this conclusion, the vocational expert considered Ms. Hall's age, education and work experience. The ALJ may properly rely on such evidence. See 20 C.F.R. § 404.1566(e).

To affirm the Commissioner's decision, this Court need only find that the decision was supported by substantial evidence and was not legally erroneous. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). After thoroughly reviewing the record and holding a hearing at which plaintiff was given the opportunity to voice objections to the Commissioner's decision, this Court concludes that the Commissioner's decision contained no legal error and was supported by substantial evidence that plaintiff's impairments were not severe, that she could have performed her past relevant work as a general clerk, and that she was not disabled during the claimed period of time.

## Conclusion

For the reasons set forth, the Commissioner's motion for judgment on the pleadings is granted. The Commissioner's decision is affirmed. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
July 11, 2006

ERIC N. VITALIANO
United States District Judge